Christopher M. Brainard, Esq. (SBN 199444)
651 N. Sepulveda Blvd., PMB 2010
Bel Air, California 90049
Telephone: (310) 266-4115
Email: christopherbrainard@gmail.com
Attorney for Plaintiffs Christopher Volek and Hairlocs, Inc.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER VOLEK, an individual; and HAIRLOCS, INC., a California corporation,<br><br>**Plaintiffs,**<br><br>v.<br><br>HARLOC HAIR INC., a British Columbia corporation,<br><br>**Defendant.** | **Case No. 2:26-cv-11657**<br><br>**COMPLAINT FOR:**<br><br>**(1) INFRINGEMENT OF A REGISTERED TRADEMARK, 15 U.S.C. § 1114(1)**<br><br>**(2) FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION, 15 U.S.C. § 1125(a)(1)(A)**<br><br>**DEMAND FOR JURY TRIAL** |

# I. JURISDICTION AND VENUE

**Subject-Matter Jurisdiction**

1. This Court has subject-matter jurisdiction over this action under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a), because Plaintiffs' claims arise under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.* (the "Lanham Act"), specifically 15 U.S.C. §§ 1114(1) and 1125(a)(1)(A).

**Personal Jurisdiction**

2. Defendant Harloc Hair Inc. ("Harloc") is a corporation organized under the laws of the Province of British Columbia, Canada. This Court has specific personal jurisdiction over Harloc under Federal Rule of Civil Procedure 4(k)(1)(A) and California Code of Civil Procedure section 410.10, because Harloc has purposefully directed the conduct alleged in this Complaint at California and this District, Plaintiffs' claims arise out of and relate to that conduct, and the exercise of jurisdiction is reasonable.

3. Harloc's California-directed conduct includes the following, each alleged more fully below: (a) Harloc operates interactive e-commerce websites at harloc.com and harloc.ca through which it offers HARLOC-branded hair extensions to United States consumers at prices stated in United States dollars, accepts payment by United States payment methods, and represents "US & Canadian Delivery" and "Next Day Delivery Available" (¶¶ 25, 26); (b) Harloc has represented to the United States Patent and Trademark Office, in a verified application, that it has used HARLOC in commerce in

the United States on hair extensions since at least as early as June 1, 2023 (¶ 22); (c) Harloc has repeatedly published HARLOC promotional posts geotagged to Los Angeles, Beverly Hills, and Calabasas, California, two of them linked directly to its online shop (¶¶ 31, 43); (d) Harloc solicits wholesale accounts from salon professionals through its website (¶ 27); (e) Harloc continued all of that conduct after it received written notice of Plaintiffs' federally registered rights (¶¶ 36, 43, 44); and (f) on October 6, 2026, Harloc accepted an order placed through harloc.com for HARLOC-branded hair extensions, charged for it in United States dollars, and agreed to ship it to an address in Santa Monica, California, in this District (¶ 45). Harloc's conduct has injured Plaintiffs, including Plaintiff Hairlocs, Inc., a California corporation with its California office in this District.

4. In the alternative, this Court has personal jurisdiction over Harloc under Federal Rule of Civil Procedure 4(k)(2). Plaintiffs' claims arise under federal law. On information and belief, Harloc is not subject to personal jurisdiction in any state's courts of general jurisdiction. Harloc's contacts with the United States as a whole — including its verified claim of use of HARLOC in United States commerce since at least as early as June 1, 2023, its offering of goods priced in United States dollars for delivery to the United States, and its promotion of HARLOC goods to United States consumers — are sufficient that the exercise of jurisdiction comports with due process. *See Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 461–62 (9th Cir. 2007).

**Venue**

5. Venue is proper in this District under 28 U.S.C. § 1391(c)(3), because Harloc is not resident in the United States and may therefore be sued in any judicial district. Venue is also proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, including Harloc's promotion of HARLOC goods through posts geotagged to Los Angeles County, its October 6, 2026 acceptance of an order for HARLOC hair extensions for shipment to Santa Monica, California, and the resulting injury to Plaintiff Hairlocs, Inc., whose California office is in this District. (¶¶ 3, 12)

6. This action is properly assigned to the Western Division. No plaintiff and no defendant resides in the Southern or Eastern Division of this District, and the action is therefore assigned to the Western Division. C.D. Cal. General Order No. 26-11, § I.B.1.a.(1)(c); see 28 U.S.C. § 84(c)(2). A substantial part of the events giving rise to Plaintiffs' claims also occurred in Los Angeles County.

## II. NATURE OF THE ACTION

7. This is an action for infringement of a federally registered trademark and for false designation of origin under the Lanham Act. Plaintiff Christopher Volek owns the trademark HAIRLOCS for hair extensions, which has been in use since January 1, 2004 and has been registered on the Principal Register of the United States Patent and Trademark Office ("USPTO") since April 21, 2020, as Registration No. 6,036,138. The

registration is incontestable. (Exhibit 1.) Plaintiff Hairlocs, Inc. is the exclusive licensee of the mark. (¶ 12)

8. Defendant Harloc, a Canadian company, sells hair extensions to consumers in the United States under the designation HARLOC — Plaintiffs' mark without its second vowel and final letter. Harloc has represented to the USPTO, in a verified application, that it began using HARLOC on hair extensions in United States commerce at least as early as June 1, 2023 — more than nineteen years after Plaintiffs' first use and more than three years after Plaintiffs' registration issued. (Exhibit 5.)

9. On April 8, 2026, Harloc received written notice of Plaintiffs' registration and a demand that it stop. (Exhibits 3, 4.) It did not stop. Thirty days later, Harloc filed its own application with the USPTO to register HARLOC for hair extensions and for retail, wholesale, and educational services in the same field. (Exhibit 5.) Harloc has since continued to promote HARLOC goods with posts geotagged to Los Angeles, announced that its HARLOC ponytails have "officially launched," and continued to offer HARLOC goods to United States consumers in United States dollars. (Exhibits 6, 7.) On October 6, 2026, it accepted an order for HARLOC hair extensions for shipment to Santa Monica, California. (Exhibit 8.)

10. Plaintiffs seek a permanent injunction against Harloc's use of HARLOC in the United States, an accounting and disgorgement of the profits Harloc has derived from that use, Plaintiffs' actual damages, costs, and — because this is an exceptional

case — attorney's fees. Plaintiffs seek relief only with respect to Harloc's use of HARLOC in commerce in the United States.

## III. THE PARTIES

11. Plaintiff Christopher Volek ("Volek") is an individual residing in McKinney, Texas. Volek is the owner of record of United States Trademark Registration No. 6,036,138 for the mark HAIRLOCS. (Exhibit 1.)

12. Plaintiff Hairlocs, Inc. ("Hairlocs") is a corporation organized under the laws of the State of California, California Secretary of State Entity No. 3491576. According to its most recent Statement of Information, filed April 21, 2026, its principal office is in Allen, Texas, and its California office is in Los Angeles County, California, within this District. Hairlocs uses the HAIRLOCS mark in commerce as the exclusive licensee of Volek, who is the sole shareholder. Volek and Hairlocs are referred to together as "Plaintiffs."

13. Defendant Harloc Hair Inc. is a corporation organized under the laws of the Province of British Columbia, Canada, with an address at 595 East Broadway St., Vancouver, British Columbia V5T 1X4, Canada, as stated in its application to the USPTO. (Exhibit 5.) Harloc operates the websites at harloc.com and harloc.ca and the Instagram account @harloc.hair. (Exhibits 5, 6, 7.)

14. Harloc's website identifies its founders as Michael Gibson and Sara Rose, and states that two further individuals, Natalie and Olivia, have joined Harloc's

ownership. (Exhibit 7.) One of Harloc's Instagram posts identifies @oliviapierson as a co-owner of Harloc. (Exhibit 2.) Plaintiffs do not name any individual as a defendant in this Complaint, and reserve the right to seek leave to amend should discovery show that any individual personally authorized, directed, or participated in the conduct alleged.

## IV. GENERAL ALLEGATIONS

### A. Plaintiffs and the HAIRLOCS Mark

15. The HAIRLOCS mark was first used in commerce on hair extensions on January 1, 2004. (Exhibit 1.) It has been used continuously in United States commerce from that date to the present, by Volek and by Hairlocs as his licensee.

16. The application to register HAIRLOCS was filed on November 5, 2018, under Serial No. 88182549. The mark was published for opposition on February 4, 2020, and on April 21, 2020 the USPTO issued Registration No. 6,036,138 on the Principal Register for "Hair extensions" in International Class 26. The registration is in standard characters and is therefore not limited to any particular font, style, size, or color. Volek is the owner of record of the registration; one assignment is recorded against it. (Exhibit 1.)

17. The USPTO has accepted Volek's declaration of continued use under Section 8 of the Lanham Act, 15 U.S.C. § 1058. On August 27, 2026, Volek filed a declaration of incontestability under Section 15, 15 U.S.C. § 1065, and on September 11, 2026 the USPTO acknowledged it. (Exhibit 1.)

18. The registration is valid, subsisting, and incontestable. Under 15 U.S.C. § 1115(b), it is conclusive evidence of the validity of the HAIRLOCS mark, of its registration, of Volek's ownership of the mark, and of Volek's exclusive right to use the mark in commerce on hair extensions, subject to proof of infringement and to the defenses and defects enumerated in that section, none of which applies.

19. Hairlocs markets and sells HAIRLOCS hair extensions — including weft, tape-in, K-tip, and I-tip extensions — to consumers and to stylists and other salon professionals throughout the United States, including in California, through its website at hairlocs.com and through other channels including salons, events, and distributors. Stylists also install HAIRLOCS extensions for their clients, who wear them. Hairlocs also provides hands-on training and certification for stylists under the HAIRLOCS mark at classes held nationwide, including in California, and through an online "Education Portal." Hairlocs' use of the mark is controlled by, and inures to the benefit of, Volek.

20. Hairlocs displays the HAIRLOCS mark with the federal registration notice, as "Hairlocs®," on its website. 15 U.S.C. § 1111.

21. Through more than twenty-two years of continuous use and promotion, the HAIRLOCS mark has come to identify Plaintiffs as the source of hair extensions and related services sold under it, and represents valuable goodwill belonging to Plaintiffs.

**B. Harloc and the HARLOC Designation**

22. In the verified application it filed with the USPTO on May 8, 2026, Harloc represented that it first used HARLOC anywhere on hair extensions at least as early as September 21, 2021, and first used it in commerce on hair extensions at least as early as June 1, 2023. (Exhibit 5.) Both dates are long after Plaintiffs' first use of HAIRLOCS on January 1, 2004, and after HAIRLOCS was registered on April 21, 2020. Plaintiffs' rights in HAIRLOCS are senior to any rights Harloc may claim in HARLOC.

23. The registration has given constructive notice of the registrant's claim of ownership of HAIRLOCS since April 21, 2020, before Harloc's claimed first use of HARLOC anywhere. 15 U.S.C. § 1072. On information and belief, a reasonable trademark clearance search conducted before Harloc adopted HARLOC would have disclosed Volek's registration.

24. Harloc advertises, offers, and sells hair extensions under the designation HARLOC, including K-tip extensions, weft extensions, clip-in extensions, tape-in extensions, and ponytails, together with hair-extension tools and accessories. (Exhibits 5, 6, 7.)

25. Harloc offers those goods through interactive e-commerce websites at harloc.ca and harloc.com. The websites state prices in United States dollars, for example "Moonstone K-Tip Extension $206.00 USD" on May 8, 2026 and "MOONSTONE K-TIP EXTENSION $203.00 USD" on August 26, 2026; display a United States flag

beside a “USD $” currency selector; and accept payment by American Express, Apple Pay, Diners Club, Discover, Google Pay, Mastercard, Shop Pay, and Visa. (Exhibits 5, 7.)

26. Harloc’s websites represent “US & Canadian Delivery” and “Next Day Delivery Available.” (Exhibits 5, 7.)

27. Harloc’s website solicits wholesale accounts through a “Wholesale Application” inviting visitors to “Apply for a Wholesale Account and get flawless hair results!” (Exhibit 7.) On information and belief, Harloc sells HARLOC hair extensions at wholesale to salons and stylists in the United States, including in California.

28. Harloc also offers education in the field of hair extensions under HARLOC. Its website refers to Harloc’s “outstanding education program,” and its USPTO application claims use of HARLOC in commerce since September 1, 2023 for “[p]roviding education courses in the field of hair extensions, hair extension installation, styling, and maintenance” and for “conducting workshops, training programs, and certification programs in the field of hair extensions.” (Exhibits 5, 7.)

29. Harloc describes itself on its website as “North America’s leading provider of ethically sourced, premium Remy Slavic hair extensions.” (Exhibit 7.)

30. Harloc promotes HARLOC goods through a verified Instagram account, @harloc.hair, which identifies itself as “harloc hair extensions.,” had approximately

66,100 followers as of August 26, 2026, displays a "Shop" function, and links to harloc.ca. (Exhibit 6.)

**C. Harloc's Promotion Directed to California**

31. Harloc has repeatedly published promotional posts for HARLOC hair extensions geotagged to Los Angeles, Beverly Hills, and Calabasas, California. They include: a December 27, 2023 post geotagged to Calabasas, California, captioned "Kim Kardashian in Harloc. Kim is wearing our colour, Nightfall, in …"; a February 4, 2024 post geotagged to Los Angeles, California, captioned "Guess who's sliving in Harloc? Paris is wearing our 20-22″ Harloc …" and linked to Harloc's shop through Instagram's "View shop" function; a February 12, 2024 post geotagged to Beverly Hills, California, captioned "Paris Hilton. Dive into the Grammys glamour with …" and likewise linked to Harloc's shop; a November 27, 2024 post geotagged to Calabasas, California, captioned "OUR BLACK FRIDAY SALE IS LIVE"; and an August 29, 2025 post geotagged to Calabasas, California, captioned "Birthday glam, Harloc style. Our co-owner & muse @oliviapierson …". (Exhibit 2.)

32. Plaintiffs plead the captions quoted in paragraph 31 as Harloc's own promotional statements. Plaintiffs do not allege that any person named in them endorsed, sponsored, or was compensated by Harloc. The posts show that Harloc chose California locations and California audiences as the setting for marketing HARLOC goods, and linked that marketing directly to its online shop.

**D. Plaintiffs' Notice to Harloc**

33. By letter dated April 1, 2026, Plaintiffs' prior counsel, Adam Pearce of Pearce Law, PC, gave Harloc written notice of Plaintiffs' rights. The letter was addressed to Sara Buziak, Michael Gibson, Harloc Hair, Inc., and Brush Salon at 595 E Broadway, Vancouver, BC V5T 0G8, Canada — the same street address that Harloc later gave the USPTO as its own, with the postal code V5T 1X4. A true and correct copy is attached as Exhibit 3. (¶ 13)

34. The letter identified Volek's Registration No. 6,036,138 and enclosed the USPTO's record of it; stated that Harloc's use of HARLOC was confusingly similar to HAIRLOCS in appearance, sound, and commercial impression and was made on identical goods; stated that Harloc's conduct infringed Plaintiffs' rights under 15 U.S.C. §§ 1114 and 1125(a); warned that continued use after receipt of the letter would be considered willful; and demanded that Harloc cease all use of HARLOC on hair extensions and related goods and services, remove infringing content from its websites and social-media accounts, cease all sales and shipments of infringing products into the United States, account for its sales, identify those involved in the manufacture and sale of HARLOC goods, and confirm its compliance in writing within ten days of the date of the letter. (Exhibit 3.)

35. The letter was shipped by UPS Worldwide Express on April 7, 2026, under tracking number 1Z377FX16610867616. (Exhibit 4.) UPS confirmed that the package

was delivered on April 8, 2026 at 1:34 p.m., “Left at: RECEIVER,” “Confirmed By: kaya.” (Exhibit 4.)

36. Harloc has had actual notice of Volek’s registration, and of Plaintiffs’ objection to its use of HARLOC, since no later than April 8, 2026. (Exhibits 3, 4.)

37. Harloc did not comply with any of the letter’s demands.

38. On May 8, 2026 — thirty days after the letter was delivered — Harloc filed U.S. Application Serial No. 99812142 with the USPTO to register HARLOC, in standard characters, for goods and services in International Classes 3, 8, 26, 35, and 41. (Exhibit 5.)

39. In International Class 26, Harloc’s application covers “Hair extensions; Hair clamps; Cases specially adapted for holding or carrying hair extensions and hair pieces; Hair pieces; Wigs.” In International Class 35 it covers online retail, retail store, and wholesale store services featuring hair extensions, hairpieces, wigs, and hair-extension accessories, claiming use in commerce since December 1, 2023. In International Class 41 it covers education, workshops, training, and certification programs in the field of hair extensions, claiming use in commerce since September 1, 2023. (Exhibit 5.)

40. The application was signed electronically on May 8, 2026 by an attorney for Harloc, who declared on Harloc’s behalf that, to the best of the signatory’s knowledge and belief, no other person had the right to use the mark in commerce either

in the identical form or in such near resemblance as to be likely to cause confusion. (Exhibit 5.) Harloc filed the application with actual notice of Volek's registration and of Plaintiffs' objection. (¶ 36)

41. The specimens Harloc submitted with its application, which it accessed on May 8, 2026, display HARLOC K-tip extensions offered at prices stated in United States dollars and the representation "US & Canadian Delivery." (Exhibit 5.)

42. On September 15, 2026, the USPTO issued a non-final Office action in Application Serial No. 99812142. The application remains pending and has not been approved for publication. (Exhibit 5.)

43. After receiving notice, Harloc continued to promote HARLOC goods on Instagram, including in posts geotagged to Los Angeles, California. Those posts include an April 14, 2026 post promoting a product labeled "harloc." "DETACH PANEL REMOVER"; a June 23, 2026 post geotagged to Los Angeles captioned "What's your vibe this summer?"; a July 3, 2026 post geotagged to Los Angeles captioned "Some looks don't need an introduction"; a post published on or about August 21, 2026, geotagged to Los Angeles, captioned "Two lengths. One iconic pony. The Harloc Ponytail has officially …"; and a post published on or about August 24, 2026 captioned "Our Ponytails have officially launched & we think it's only right to give you some of our BTS moments …". (Exhibit 6.)

44. As of August 26, 2026, Harloc's website continued to offer HARLOC hair extensions in United States dollars, to accept United States payment methods, to represent "US & Canadian Delivery" and "Next Day Delivery Available," and to solicit wholesale accounts. (Exhibit 7.)

45. On October 6, 2026, Stephanie Lee placed an order through Harloc's website at harloc.com for one HARLOC "Cedarwood K-Tip Extension" in the 20-22″ length, listed at $198.00, to be shipped to an address in Santa Monica, California, in Los Angeles County, within this District. Harloc accepted the order; charged a total of $238.75 in United States dollars, including $16.00 for shipping and $24.75 for "duties"; and confirmed the order as Order #2543 (Confirmation No. 08P1F0LHF), to be shipped by UPS Standard. (Exhibit 8.)

46. On information and belief, Harloc has sold and shipped HARLOC-branded goods to other customers in the United States, including in California, since at least June 1, 2023, and continues to do so.

**F. Likelihood of Confusion**

47. The marks are highly similar. HARLOC consists of the letters of HAIRLOCS with the second vowel and the final letter removed. Both begin with the same sound, "HAIR" or "HAR," and end with the same element, "LOC." Spoken aloud, HARLOC and HAIRLOCS are nearly indistinguishable. The two designations create the same overall commercial impression when used on the same goods, hair extensions.

Because Volek's mark is registered in standard characters, Harloc's lower-case stylization, "harloc.," does not distinguish the two.

48. The goods are identical. Volek's registration covers "hair extensions," and "hair extensions" are the first goods identified in Class 26 of Harloc's own application. (Exhibits 1, 5.)

49. The parties' services are closely related to their goods and to each other. Both sell hair extensions to consumers and to salon professionals — Harloc soliciting the latter through wholesale accounts — and both offer education, training, and certification in the installation and maintenance of hair extensions. (¶¶ 19, 27, 28)

50. The parties' channels of trade and classes of purchasers are the same or overlap. Both sell hair extensions online, and through social media, to consumers and to salon professionals in the United States, including in California; consumers also wear, and often ask for by name, the extensions their stylists install. On information and belief, Harloc sells to salon professionals in the United States, including in California. (¶¶ 19, 25, 27, 30, 46)

51. HAIRLOCS is a strong mark in the marketplace. It has been used continuously for more than twenty-two years in the hair-extension trade. Sales of HAIRLOCS hair extensions total many millions of dollars each year, Plaintiffs spend thousands of dollars on advertising the mark, and HAIRLOCS is well known in the hair-extension industry and recognized by salon professionals and consumers. (¶ 15) Its

registration is incontestable, so its validity may not be challenged on the ground that the mark is merely descriptive. (¶ 18) *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 196–97, 205 (1985).

52. Some of the goods are sold at prices that may invite a degree of purchaser care; Harloc lists individual K-tip extensions at about $198 to $224. (Exhibits 5, 7, 8.) Some of the parties' customers are salon professionals. Purchaser care does not dispel confusion here, however. Where the marks sound almost the same and the goods are identical, even a careful purchaser, or a stylist recommending a product to a client, is likely to take HARLOC for a line, affiliate, or licensee of HAIRLOCS, and the online purchases at issue involve no contact with the seller that would reveal that the two businesses are unrelated.

53. Harloc adopted HARLOC after Volek's registration had issued and with constructive notice of it, and continued and expanded its use after receiving actual notice — filing its own application, announcing the launch of HARLOC ponytails, and accepting an order for HARLOC hair extensions for shipment to Santa Monica, California. (¶¶ 23, 36, 38, 43, 45)

54. Harloc's use of HARLOC is likely to cause consumers to believe, mistakenly, that Harloc's goods and services originate with Plaintiffs, or that Harloc is affiliated with, licensed by, sponsored by, or approved by Plaintiffs.

**G. Absence of Authorization**

55. Neither Volek nor Hairlocs has licensed, authorized, consented to, sponsored, or approved Harloc's use of HARLOC or of any designation confusingly similar to HAIRLOCS. No affiliation exists between Plaintiffs and Harloc.

**H. Willfulness**

56. Since no later than April 8, 2026, Harloc has continued to use HARLOC in United States commerce with actual knowledge of Volek's registration and of Plaintiffs' objection, and in deliberate disregard of Plaintiffs' rights. (¶¶ 36, 38, 43, 44, 45) Harloc's infringement since that date has been knowing and willful.

**I. Harm to Plaintiffs**

57. Harloc's conduct has caused, and unless enjoined will continue to cause, irreparable harm to Plaintiffs, including loss of control over the HAIRLOCS mark and over the reputation and goodwill it embodies, and erosion of Volek's exclusive right to use the mark on hair extensions. Plaintiffs have no adequate remedy at law for that harm. Plaintiffs are entitled to a rebuttable presumption of irreparable harm upon a finding of a violation, or upon a finding of likelihood of success on the merits on a motion for a preliminary injunction or temporary restraining order. 15 U.S.C. § 1116(a).

58. On information and belief, Harloc has received revenues and derived profits from sales of HARLOC-branded goods and services in the United States. The amount of those revenues and profits is within Harloc's knowledge and control and is not presently

known to Plaintiffs. Plaintiffs are entitled to an accounting. On information and belief, Harloc's conduct has also diverted sales from Plaintiffs and injured Hairlocs' business reputation.

## V. EXHIBITS

59. Attached hereto as Exhibit 1 is a true and correct copy of the USPTO's record of Registration No. 6,036,138 for the mark HAIRLOCS, printed October 5, 2026. This document is relevant because it shows Volek as owner of record, the goods covered, the dates of first use, filing, publication, and registration, the standard-character claim, the live and registered status of the mark, the acceptance of the Section 8 declaration, and the USPTO's acknowledgment of the Section 15 declaration of incontestability on September 11, 2026.

60. Attached hereto as Exhibit 2 is a true and correct copy of screen captures, made on August 26, 2026, of five posts on Harloc's Instagram account @harloc.hair dated December 27, 2023, February 4, 2024, February 12, 2024, November 27, 2024, and August 29, 2025. This document is relevant because it shows Harloc's promotion of HARLOC goods through posts geotagged to Calabasas, Los Angeles, and Beverly Hills, California, two of them linked to Harloc's shop, and Harloc's identification of a co-owner.

61. Attached hereto as Exhibit 3 is a true and correct copy of the letter dated April 1, 2026 from Plaintiffs' prior counsel, Adam Pearce of Pearce Law, PC, to Harloc,

with its enclosure. This document is relevant because it shows the content of the notice given to Harloc and the demands made.

62. Attached hereto as Exhibit 4 is a true and correct copy of (a) page 1 of the UPS Store Parcel Shipping Order for the April 1, 2026 letter, showing shipment on April 7, 2026 by UPS Worldwide Express under tracking number 1Z377FX16610867616, and (b) UPS's emailed proof of delivery for that shipment. This document is relevant because it shows the date, carrier, service, addressees, and tracking number of the shipment of the notice, and that the package was delivered on April 8, 2026 at 1:34 p.m., left with the receiver, and confirmed by "kaya," and therefore the date on which Harloc received actual notice.

63. Attached hereto as Exhibit 5 is a true and correct copy of (a) excerpts of Harloc's U.S. Application Serial No. 99812142 to register HARLOC, filed May 8, 2026, comprising the application form, the drawing, and one copy of each specimen of use submitted with it (for International Classes 8, 26, 35, and 41), and (b) the USPTO's record of that application, printed October 5, 2026. This document is relevant because it shows Harloc as applicant and its place of organization, the goods and services claimed, the dates of first use Harloc declared, the verified declaration and its signatory and date, specimens showing HARLOC goods offered in United States dollars with "US & Canadian Delivery," the current status of the application, and the issuance of a non-final Office action on September 15, 2026.

64. Attached hereto as Exhibit 6 is a true and correct copy of screen captures, made on August 26, 2026, of Harloc's Instagram account profile and of five posts published after April 8, 2026. This document is relevant because it shows Harloc's continued promotion of HARLOC goods after notice, including in posts geotagged to Los Angeles, California, and its announcement that HARLOC ponytails had "officially launched".

65. Attached hereto as Exhibit 7 is a true and correct copy of screen captures, made on August 26, 2026, of pages of Harloc's website at harloc.com. This document is relevant because it shows Harloc's offering of HARLOC hair extensions at prices in United States dollars, its United States payment methods, its representations of United States delivery, its wholesale application, and its description of its business and education program.

66. Attached hereto as Exhibit 8 is a true and correct copy of (a) the order-confirmation page displayed by Harloc's website at harloc.com on October 6, 2026, and (b) Harloc's email of the same date confirming Order #2543, both for the order described in paragraph 45, with the purchaser's street address, email address, billing address, and the map and web-address tokens identifying her location or account redacted. This document is relevant because it shows that Harloc accepted an order for one HARLOC "Cedarwood K-Tip Extension," listed at $198.00, charged $238.75 in

United States dollars, including shipping and "duties," and confirmed that the order would be shipped by UPS Standard to Santa Monica, California, within this District.

## VI. FIRST CLAIM FOR RELIEF

## INFRINGEMENT OF A REGISTERED TRADEMARK — 15 U.S.C. § 1114(1)

**(By Plaintiffs Against Defendant Harloc Hair Inc.)**

67. Plaintiffs incorporate by reference the allegations of all prior paragraphs as though fully set forth herein.

68. To establish infringement of a registered mark under 15 U.S.C. § 1114(1)(a), a plaintiff must show (i) that it owns a valid, protectable mark; (ii) that the defendant used in commerce, without the plaintiff's consent, a reproduction, copy, or colorable imitation of the mark in connection with the sale, offering for sale, distribution, or advertising of goods or services; and (iii) that the use is likely to cause confusion, mistake, or deception. 15 U.S.C. § 1114(1)(a); *see Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011).

69. Volek is the registrant of the HAIRLOCS mark and brings this claim as registrant. Hairlocs joins this claim as Volek's exclusive licensee, to the extent of its rights in the mark. (¶¶ 11, 12)

70. As to the first element, Volek owns a valid and protectable mark. Registration No. 6,036,138 is valid, subsisting, and incontestable, and is conclusive

evidence of the validity of the mark and of Volek's ownership and exclusive right to use it on hair extensions. (¶¶ 15, 16, 17, 18)

71. As to the second element, Harloc has used and continues to use HARLOC — a colorable imitation of HAIRLOCS — in United States commerce, without Plaintiffs' consent, in connection with the advertising, offering for sale, sale, and distribution of hair extensions and related goods and services. (¶¶ 24, 25, 26, 27, 28, 30, 31, 38, 41, 43, 44, 45, 46, 55)

72. As to the third element, Harloc's use is likely to cause confusion, mistake, and deception. The marks are nearly identical in sound and highly similar in appearance and meaning; the goods are identical; the services are closely related; the channels of trade and classes of purchasers overlap; the HAIRLOCS mark is commercially strong and its registration is incontestable; purchaser care does not dispel confusion; and Harloc adopted HARLOC with constructive notice of Volek's registration and continued and expanded its use after actual notice. (¶¶ 47, 48, 49, 50, 51, 52, 53, 54).

73. Harloc's conduct is the direct and proximate cause of injury to Plaintiffs, including irreparable injury to the HAIRLOCS mark and the goodwill it represents, and, on information and belief, the diversion of sales. (¶¶ 57, 58)

74. Harloc has had actual notice of Volek's registration since no later than April 8, 2026. (¶ 36) 15 U.S.C. § 1111. Harloc's infringement since that date has been willful. (¶ 56)

75. Plaintiffs are entitled on this claim to injunctive relief under 15 U.S.C. § 1116(a); to an accounting and an award of Harloc's profits, Plaintiffs' actual damages, and the costs of the action under 15 U.S.C. § 1117(a), subject to the principles of equity; to an order under 15 U.S.C. § 1118 that the labels, signs, prints, packages, wrappers, receptacles, and advertisements in Harloc's possession bearing HARLOC be delivered up and destroyed; to a determination, under 15 U.S.C. § 1119, that Harloc is not entitled to registration of HARLOC in Application Serial No. 99812142, and such further order with respect to that application as the Court may make under 15 U.S.C. §§ 1116(a) and 1119; and, because this is an exceptional case, to an award of reasonable attorney's fees in the Court's discretion under 15 U.S.C. § 1117(a). Willfulness is not a precondition to an award of profits, although a defendant's mental state bears on the relief to be awarded. *Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212, 219 (2020).

## VII. SECOND CLAIM FOR RELIEF

## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION — 15 U.S.C. § 1125(a)(1)(A)

**(By Plaintiffs Against Defendant Harloc Hair Inc.)**

76. Plaintiffs incorporate by reference the allegations of all prior paragraphs as though fully set forth herein.

77. To establish a claim under 15 U.S.C. § 1125(a)(1)(A), a plaintiff must show (i) that it has a protectable interest in a mark; (ii) that the defendant used in commerce a

word, term, name, symbol, or device, or a false designation of origin, in connection with goods or services; and (iii) that the use is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of the defendant with the plaintiff, or as to the origin, sponsorship, or approval of the defendant's goods or services. Registration is not required for this claim. Plaintiffs' injuries — to their commercial interests in reputation and sales — fall within the zone of interests protected by 15 U.S.C. § 1125(a) and were proximately caused by Harloc's conduct. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–34 (2014).

78. As to the first element, Volek owns, and Hairlocs as exclusive licensee uses, the HAIRLOCS mark, which is federally registered and has been used continuously in commerce since January 1, 2004. Each Plaintiff has a commercial interest in the reputation and sales associated with it. (¶¶ 12, 15, 16, 18, 19, 21)

79. As to the second element, Harloc has used and continues to use HARLOC in United States commerce as a source identifier for hair extensions and related goods and services — on its websites, on its Instagram account, in its advertising and promotion, and on its goods. (¶¶ 24, 25, 30, 31, 43, 44, 45)

80. As to the third element, Harloc's use is likely to cause confusion, mistake, and deception as to the affiliation, connection, or association of Harloc with Plaintiffs, and as to the origin, sponsorship, or approval of Harloc's goods and services. (¶¶ 47, 48, 49, 50, 51, 52, 53, 54, 55)

81. Harloc's conduct is the direct and proximate cause of injury to Plaintiffs' commercial interests in reputation and sales, including injury to the goodwill of the HAIRLOCS mark and, on information and belief, the diversion of sales from Hairlocs. (¶¶ 57, 58)

82. Plaintiffs are entitled on this claim to injunctive relief under 15 U.S.C. § 1116(a); to an accounting and an award of Harloc's profits, Plaintiffs' actual damages, and the costs of the action under 15 U.S.C. § 1117(a), subject to the principles of equity; to such relief under 15 U.S.C. § 1118 as the Court may direct; and, because this is an exceptional case, to an award of reasonable attorney's fees in the Court's discretion under 15 U.S.C. § 1117(a).

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Christopher Volek and Hairlocs, Inc. pray for judgment against Defendant Harloc Hair Inc. as follows:

1. For a permanent injunction under 15 U.S.C. § 1116(a) restraining Harloc, its officers, directors, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them who receive actual notice of the injunction, from (a) using HARLOC, or any other designation confusingly similar to HAIRLOCS, in commerce in the United States in connection with the advertising, promotion, offering for sale, sale, or distribution of hair extensions, hairpieces, wigs, hair-care preparations, hair-

extension tools and accessories, or retail, wholesale, or educational services relating to any of them; (b) offering or shipping goods bearing HARLOC, or any confusingly similar designation, to purchasers in the United States, whether through harloc.com, harloc.ca, any other website, any social-media account, or otherwise; and (c) representing, directly or by implication, that Harloc or its goods or services are affiliated with, sponsored by, or approved by Plaintiffs (First and Second Claims for Relief);

2. For a determination under 15 U.S.C. § 1119 that Harloc is not entitled to registration of HARLOC in U.S. Application Serial No. 99812142, an order directing the Director of the USPTO to refuse registration of that application, and an order under 15 U.S.C. § 1116(a) requiring Harloc to expressly abandon it (First Claim for Relief);

3. For an order under 15 U.S.C. § 1118 that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in Harloc's possession bearing HARLOC and intended for the United States market, and all plates, molds, matrices, and other means of making them, be delivered up and destroyed (First and Second Claims for Relief);

4. For an accounting of all revenues, costs, and profits derived by Harloc from goods and services advertised, offered, sold, or distributed in the United States under HARLOC (First and Second Claims for Relief);

5. For an award under 15 U.S.C. § 1117(a), subject to the principles of equity, of (a) Harloc's profits from its use of HARLOC in commerce in the United States, together with such sum as the Court finds just if the amount of recovery based on profits is inadequate or excessive, such sum to constitute compensation and not a penalty; and (b) Plaintiffs' actual damages, together with such sum above actual damages, not exceeding three times their amount, as the Court finds just according to the circumstances of the case; the total of (a) and (b), exclusive of attorney's fees, costs, and interest, to be proven at trial and not to exceed $5,000,000.00 (First and Second Claims for Relief);
6. For the costs of this action under 15 U.S.C. § 1117(a) (First and Second Claims for Relief);
7. For reasonable attorney's fees under 15 U.S.C. § 1117(a), this being an exceptional case (First and Second Claims for Relief);
8. For prejudgment and post-judgment interest as permitted by law;
9. For an order under 15 U.S.C. § 1116(a) requiring Harloc to file with the Court and serve upon Plaintiffs, within thirty days after service of the injunction, a report in writing and under oath setting forth in detail the manner and form in which it has complied with the injunction; and
10. For such other and further relief as the Court deems just and proper.

## IX. DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b) and Local Rule 38-1, Plaintiffs demand a trial by jury on all issues so triable.

Dated: October 6, 2026

Respectfully submitted,

______________________________

Christopher M. Brainard, Esq. (SBN 199444)
Attorney for Plaintiffs Christopher Volek and Hairlocs, Inc.